**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**ZEPPORIAH EDMONDS**                                    **CIVIL ACTION**

**VERSUS**                                              **NO. 16-298**

**NEW ORLEANS CITY, ET AL.**                            **SECTION "B"(3)**

<u>**ORDER AND REASONS**</u>

Before the Court are several motions filed by the parties.

First is the "City Defendants' Motion to dismiss Pursuant to F.R.C.P. 12(b)(1) & 12(c) or alternatively, Motion for Summary Judgment Pursuant to F.R.C.P. 56." Rec. Doc. 60.[1] Plaintiff timely filed an objection (Rec. Doc. 73)[2] and a response memorandum (Rec. Doc. 74). Defendants then requested (Rec. Doc. 76), and were granted (Rec. Doc. 77), leave to file a reply memorandum (Rec. Doc. 78).

---

[1] Because the Court considered more than just the pleadings, the motion will be treated as one for summary judgment.

[2] Defendants' motion was filed on May 16, 2017. Rec. Doc. 60. This Court previously explained that, pursuant to the Court's scheduling order, all case-dispositive pretrial motions were to be "filed and served in sufficient time to permit hearing thereon no later than JUNE 2, 2017." Rec. Doc. 68 at 1 (citing Rec. Doc. 43 at 1). June 2 was not a motion day, however, so these motions had to be filed in sufficient time to permit hearing thereon no later than May 24, the motion day immediately preceding June 2; pursuant to Local Rule 7.2, the motion therefore had to be filed no later than May 9. *Id.* Because Defendants' motion was filed on May 16, it was set for submission on June 7 and Defendants filed a motion to expedite. *Id.* at 1-2 (citing Rec. Doc. 65). Plaintiff asked the Court to dismiss the motion as untimely. Rec. Doc. 66. Because Plaintiff had fourteen days to draft an opposition memorandum and Plaintiff also filed three motions on May 16 (one of which was marked deficient and subsequently re-filed on May 24, *see* Rec. Docs. 61-63, 67), the Court agreed to consider Defendants' motion on June 7. Rec. Doc. 68 at 2-3. In the objection filed to the instant motion, Plaintiff essentially reiterates the arguments she previously made. Those arguments are rejected for the same reasons expressed in this Court's earlier order. *See* Rec. Doc. 68.

Second is "Plaintiff Zepporiah Edmonds' Rule 60 Motion to Reinstate Age Discrimination Claims dismissed from the Plaintiff's Original Petition by this Court due to Mistake included within the Court's Order and Reasons Issued July 27, 2016 – Document 38." Rec. Doc. 62. Defendants timely filed an opposition memorandum. Rec. Doc. 70.

Third is "Plaintiff Zepporiah Edmonds' Motion to Remove and Replace Defense Counsel Elizabeth Robins as Defendants' Counsel in the Matter Due to Her Being Included by the Plaintiff as a Vital Material Witness." Rec. Doc. 63. Defendants timely filed an opposition memorandum. Rec. Doc. 71. For the reasons discussed below,

**IT IS ORDERED** that Defendants' motion (Rec. Doc. 60) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Rule 60 motion (Rec. Doc. 62) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's motion to disqualify counsel (Rec. Doc. 63) is **DISMISSED AS MOOT**.

I.   **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This case arises out of the termination of Zepporiah Edmonds ("Plaintiff") on January 11, 2016. Rec. Doc. 1 at 4. She was a parking administrator in the parking division of the Department of Public Works ("DPW") and therefore employed by Defendant New Orleans City ("New Orleans"). *Id.* In her original complaint,

2

Plaintiff claimed that, beginning in 2012, she was "targeted . . . for harassment . . . ." *Id.* She believed that the harassment started after Mayor Mitch Landrieu was elected in 2010 and appointed non-African American supervisors with insufficient city government experience, including Defendant Mark D. Jernigan ("Jernigan"). *Id.* at 4, 6. Defendant Linda Copeland ("Copeland"), the human resources manager for the DPW, allegedly participated in the harassment. *Id.* at 7. Plaintiff also believes that the harassment only started after she reported potential misconduct to the Office of Inspector General ("OIG") and various other entities and supervisors in 2012. *Id.* at 7, 9. She claims that the city retaliated against her for making these complaints by no longer recognizing her as the curb management expert, dismissing her work product, and undermining her authority. *Id.* at 10-11. Because of this "hostile work environment," Plaintiff went on sick leave on June 22, 2015. *Id.* at 15. She was eventually terminated on January 11, 2016. Rec. Doc. 53 at 10.

From 2014 through 2016, Plaintiff filed three separate complaints with the Equal Employment Opportunity Commission ("EEOC"). On October 13, 2015, she received a right to sue letter for the first complaint (filed with the EEOC on November 4, 2014 and alleging race and age discrimination and retaliation, *see* Rec. Doc. 60-4 at 1); the right to sue letter gave her until January 18, 2016 to file a lawsuit. Rec. Doc. 1 at 17.

Thus, on January 12, 2016, Plaintiff filed a complaint against New Orleans, Copeland, and Jernigan, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act of 1990 ("ADA"), and various state and federal whistleblower laws, in addition to defamation, and intentional infliction of emotional distress. Rec. Doc. 1 at 2-3, 17-18, 20-21.

On January 19, 2016, Plaintiff moved for a temporary restraining order enjoining Defendants from terminating her employment. Rec. Doc. 5. This Court denied the motion, reasoning that "[t]he position that plaintiff hope[d] to maintain [was] no longer the status quo as her termination has already taken effect, meaning a [temporary restraining order was] no longer an appropriate remedy." Rec. Doc. 6 at 2.

On March 3, 2016, Defendants filed a motion to dismiss for lack of jurisdiction. Rec. Doc. 18. On July 27, 2016, this Court granted the motion in part. Rec. Doc. 38. Plaintiff's first EEOC complaint averred that Defendants retaliated against her, discriminated against her based on her race and age, and created a hostile work environment. *Id.* at 1-2, 8 (citing Rec. Doc. 35-2 at 2). In her second EEOC complaint, filed on July 15, 2015, Plaintiff alleged retaliation. *Id.* at 2 (citing Rec. Doc. 18-2 at 2); *see also* Rec. Doc. 60-4 at 1. Before filing the instant suit, Plaintiff only received a right to sue notice for the first

4

complaint. Rec. Doc. 38 at 2-3. Because a party must first exhaust his or administrative remedies before filing suit, this Court found that Plaintiff could raise claims for retaliation, race discrimination, and hostile work environment based on the first EEOC complaint. *Id.* at 8. She could have also raised age discrimination claims, but these claims were not included in Plaintiff's original complaint. *Id.*[3] Plaintiff alleged disability discrimination and wrongful termination in her original complaint, but she did not allege these claims in her first EEOC charge, so the Court lacked jurisdiction over such claims. *Id.* at 9, 11-12. The Court further found that Plaintiff failed to state a valid whistleblower claim. *Id.* at 11. Thus, the Court granted the motion in part to dismiss the disability, age, whistleblower, and wrongful termination claims. *Id.* at 12.

In response, Plaintiff filed a "motion for new trial," asking this Court to reinstate the dismissed claims under state law. Rec. Doc. 39. This Court construed it as a motion for reconsideration and denied because Plaintiff failed to cite to any applicable Louisiana law. Rec. Doc. 41 at 8.

On December 12, 2016, Plaintiff sought leave to file an amended complaint. Rec. Doc. 45. Plaintiff's motion was referred

---

[3] This finding is the subject of Plaintiff's Rule 60 motion, discussed below.

to Magistrate Judge Daniel Knowles, who granted it as unopposed on December 21, 2016. Rec. Doc. 52.

In her amended complaint, Plaintiff alleged that she received right to sue letters for her second and third EEOC complaints. *See* Rec. Doc. 45-2 at 1-2 (both letters are dated September 26, 2016). She stated that in her third EEOC complaint, filed on April 13, 2016, she alleged retaliation, wrongful termination, hostile work environment, and race and disability discrimination. Rec. Doc. 53 at 5; *see also* Rec. Doc. 60-8 at 1. Nonetheless, Plaintiff removed all references to whistleblower claims and added claims under Louisiana Civil Code article 2315. *See* Rec. Doc. 53 at 26. Otherwise, save for a few minor changes, Plaintiff's amended complaint largely reflected her original complaint.

On May 16, 2017, the parties filed the instant motions. Rec. Docs. 60, 62-63.

## II. <u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

Defendants argue that this Court lacks subject matter jurisdiction over Plaintiff's wrongful termination claim, as it relates to her demand for an injunction[4] and reinstatement, and that Plaintiff has otherwise failed to state a valid claim for

---

[4] This Court previously denied Plaintiff's request for an injunction. Rec. Doc. 6. Plus, Plaintiff admits in her response memorandum that she is no longer seeking an injunction. Rec. Doc. 74 at 6-7. Thus, the Court will consider Defendants' arguments concerning subject matter jurisdiction only as they relate to Plaintiff's request for reinstatement.

relief, such that they move for summary judgment under Federal Rule of Civil Procedure 56. Rec. Doc. 60 at 1-2, 4.

**A. SUMMARY JUDGMENT STANDARD**

Under Rule 56, summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)); *see also TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant must point to "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. If and when the movant carries this burden, the non-movant must then go beyond the pleadings and present other evidence to establish a genuine issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent

summary judgment proof that there is an issue of material fact warranting trial." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). Conclusory rebuttals of the pleadings are insufficient. *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993).

### B. PLAINTIFF'S WRONGFUL TERMINATION CLAIM(S)

Defendants argue that Plaintiff's demand for reinstatement is subject to the exclusive jurisdiction of the Louisiana Civil Service Commission ("CSC"). Rec. Doc. 60-1 at 4. Apparently, the CSC conducted several hearings regarding Plaintiff's case from April 2016 through January 2017. *Id.*[5]

In response, Plaintiff admits that she is a classified civil service employee and that the CSC rules limit the claims of such employees. Rec. Doc. 74 at 3. She specifically admits that the CSC has "exclusive authority as it involves reinstatement appeals after termination, or restoration to particular employment positions," but argues that the CSC does not have exclusive jurisdiction over her damages claims. *Id.* at 7. To that end, she argues that neither the Louisiana Constitution nor the CSC rules prohibit judicial litigation for "racial and age and disability discrimination, ADA violations, hostile work environments,

---

[5] Defendants also note that Plaintiff sought a temporary restraining order from the Orleans Parish Civil District Court in an attempt to enjoin Defendants from terminating her employment, but Plaintiff eventually withdrew the claim. Rec. Doc. 60-1 at 4.

intentional infliction of emotional distress and [related claims]." *Id.* at 5. Thus, Plaintiff admits that this Court lacks subject matter jurisdiction over her request to be reinstated, but maintains that we have jurisdiction over her remaining claims for damages. Even though this argument is not abundantly clear from the parties' filings, it is consistent with the law.

In *Kenyatta-Bean v. Housing Authority of New Orleans*, the defendant argued "that the plaintiffs' state law claims that they did not receive the appropriate merit pay increases" should have been brought before the CSC. No. 04-2592, 2005 WL 3543793, at *4 (E.D. La. Nov. 18, 2005). The district court recognized that Article 10 of the Louisiana Constitution vests the CSC with general rulemaking powers for the administration of the classified service. *Id.; see also* LA. CONST. ANN. art. X, § 12 (providing that the CSC "shall have the exclusive power and authority to hear and decide all removal and disciplinary cases" and that appeals are to be taken to the court of appeals in which the CSC is located). Thus, "employment related claims by classified employees must be presented to the [CSC], and this court is without jurisdiction to entertain such claims." 2005 WL 3543793, at *4 (citations omitted). Further, article X, section 8(B) of the Louisiana Constitution specifically provides that "[n]o classified employee shall be discriminated against because of his . . . race. A classified employee so discriminated against shall have the right of appeal

to the appropriate commission pursuant to Section 12 of this Part." Thus, in a case cited by Plaintiff, the Louisiana First Circuit explained "that the constitution limits the jurisdiction of the CSC to two categories of claims: (1) discrimination claims provided for in § 8(B); and (2) removal or disciplinary claims provided for in §§ 12(A) & 8(A)." *St. Romain v. State, through Dep't of Wildlife & Fish*, 03-0291 (La. App. 1 Cir. 11/12/03); 863 So. 2d 577, 583, *writ denied sub nom.,* 04-0096 (La. 3/26/04); 871 So. 2d 348.

Based on these rules, a federal district court from the Middle District of Louisiana held that "the CSC has exclusive jurisdiction over termination claims, including termination claims based on disability discrimination." *Pike v. Office of Alcohol & Tobacco Control of the La. Dep't of Revenue*, 157 F. Supp. 3d 523, 540 (M.D. La. 2015). However, the same court also held that it had jurisdiction over the plaintiff's state law general tort claims "because the CSC has no authority to provide for general tort damages." *Id.* at 542. *See also McCain v. City of Lafayette*, 98-1902, pp. 14-15 (La. App. 3 Cir. 5/5/99); 741 So. 2d 720, 728, *writ denied,* 99-1578 (La. 9/17/99); 747 So. 2d 563 (holding that the civil service board does not have exclusive jurisdiction to hear those cases in which the remedy could not be awarded by the board; thus, the plaintiff's claims for damages due to loss of sick and vacation leave, health insurance, and retirement

10

benefits, remedies that could be awarded by the board for wrongful termination, should have been brought before the board, but claims for general damages and loss of business reputation were properly raised before the state district court); *Westmoreland v. La. Dep't of Health & Hosps.*, 99-651 (La. App. 3 Cir. 6/1/99); 735 So. 2d 944, *writ denied,* 99-1884 (La. 10/8/99); 751 So. 2d 222 (denying writs because the plaintiff did not attempt to circumvent the CSC's exclusive jurisdiction; "[a]lthough the allegedly tortious conduct of defendants is connected to the disciplinary action taken against plaintiff, the instant suit seeks damages for the tort of defamation which is not within the jurisdiction of the [CSC]").

Defendants clarify in their reply memorandum that they believe this Court lacks jurisdiction over only Plaintiff's request for reinstatement. Rec. Doc. 78 at 4-5. This Court agrees with that assessment of the law. Even though the CSC exercises jurisdiction over race discrimination and removal and disciplinary claims, this Court has jurisdiction over Plaintiff's damages claims (which apparently apply to all of Plaintiff's claims for discrimination, hostile work environment, retaliation, and so forth). Therefore, this Court grants Defendants' motion under Rule 56 to dismiss Plaintiff's claim for reinstatement.

## C. PLAINTIFF'S TITLE VII AND ADA CLAIMS[6]

Where there is no direct evidence of discrimination, courts use the burden-shifting framework articulated by the Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-04 (1973) to analyze a plaintiff's claims for discrimination and retaliation. *Smith v. City of St. Martinville*, 575 F. App'x 435, 438 (5th Cir. 2014) (citations omitted). "Under this framework, a plaintiff first must raise a genuine issue of material fact as to each element of a prima facie case." *Id.* (citation omitted).

> To establish a prima facie case of discrimination under the *McDonnell Douglas* framework, a plaintiff must show that "(1) [s]he is a member of a protected class, (2) [s]he was qualified for the position at issue, (3) [s]he was the subject of an adverse employment action, and (4) [s]he was [replaced by someone outside her protected group or] treated less favorably . . . than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances."

*Id.* (quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009)); *see also Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 350 (5th Cir. 2008).

To establish a prima facie case for claims arising under the ADA, Plaintiff must show that (1) she has a disability, (2) she is qualified for the job she held, and (3) she was subject to an

---

[6] Title VII and the ADA hold "employers" liable and, even though a supervisor may be an "employer," he or she "cannot be held liable in his [or her] individual capacity, only in his [or her] official capacity as an agent of the employer." *Williamson v. Am. Nat'l Ins. Co.*, 695 F. Supp. 2d 431, 440 n.7 (S.D. Tex. 2010) (citing *Grant v. Lone Star Co.*, 21 F.3d 649, 652-53 (5th Cir. 1994)). Therefore, any such claims against Defendants Jernigan or Copeland in their individual capacities are dismissed with prejudice.

adverse employment action because of her disability. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 695 (5th Cir. 2014) (citations omitted).

To establish a hostile work environment claim, Plaintiff must prove that (1) she belongs to a protected group; (2) she suffered unwelcome harassment; (3) the harassment was based on a prohibited ground; (4) the harassment "affected a term, condition, or privilege of employment;" and (5) "the employer knew or should have known of the harassment . . . and failed to take prompt remedial action." *Mitchell v. Snow*, 326 F. App'x 852, 856 (5th Cir. 2009) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).

Finally, "[t]o establish a *prima facie* claim of retaliation . . . a plaintiff must demonstrate (1) participation in a protected activity; (2) an adverse employment action; and (3) a causal link between the activity and the adverse action." *Haire v. Bd. of Sup'rs of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 367 (5th Cir. 2013). *See also White v. Denton Cty.*, 655 F. App'x 1021, 1024 (5th Cir. 2016) (citing *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 624 (5th Cir. 2008)).

After the plaintiff establishes a prima facie case of discrimination or retaliation, the burden shifts to the employer to "'articulate some legitimate, nondiscriminatory reason' for the adverse employment action." *Smith*, 575 F. App'x at 438 (citations

omitted). If the employer makes this showing, the burden shifts back to the employee to show "either (1) that the proffered reason is false or unworthy of credence, or is merely pretext for discrimination, or (2) that the reason, while true, is only one of the reasons for [the employer's] conduct, and another motivating factor is the plaintiff's race," disability, or participation in a protected activity. *Id.* (citations and quotation marks omitted); *LHC Grp.*, 773 F.3d at 694 (citation omitted); *Haire*, 719 F.3d at 367 (citation omitted).

Plaintiff essentially responds to all of Defendants' arguments by attaching a copy of her original and amended complaints and arguing that the allegations raised in those complaints present genuine issues of material fact. Rec. Doc. 74 at 16-23. Both of her complaints were verified. *See* Rec. Docs. 1 at 25; 53 at 35-36. According to the Fifth Circuit, a party's sworn pleadings may be considered competent summary judgment evidence. *See Higgins v. Morris*, 673 F. App'x 376, 378 n.3 (5th Cir. 2016) (citing *Falcon v. Holly*, 408 F. App'x 325, 326 (5th Cir. 2012); *Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003); *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994); 28 U.S.C. § 1746(2)).

To establish a prima facie case for race discrimination, Plaintiff must show that she is a member of a protected group, she was qualified for the position, she suffered an adverse employment action, and she was either replaced by someone outside the

14

protected group or treated less favorably than similarly situated employees outside the protected group. Here, Plaintiff's complaint implies that she is African American. *See* Rec. Doc. 53 at 11 (alleging that there "existed a palpable racial animus <u>against her and other Black employees</u>") (emphasis added). So, she satisfies the first prong. She also alleged that she was a civil service employee with an "unimpeachable" record for thirty-one years, thereby arguably satisfying the second prong. *See id.* at 20. Her complaint also contains a few allegations that could be construed as adverse employment actions.

First, she avers that she was subject to an "illegal . . . position transfer." Rec. Doc. 53 at 17. Specifically, she states that she was no longer "acknowledged as the 'parking expert.'" *Id.* For Title VII discrimination claims, only "ultimate employment actions" are considered actionable adverse employment actions. *McCoy v. City of Shreveport*, 492 F.3d 551, 560 (5th Cir. 2007) (citations omitted). An ultimate employment decision includes decisions regarding "hiring, granting leave, discharging, promoting, or compensating." *Id.* at 559 (quoting *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002), *as amended on denial of reh'g & reh'g en banc*. Based on Plaintiff's complaint. There is no reason to believe that no longer being recognized as "the expert" is an "ultimate employment decision." Plaintiff does not allege that this was an official title or position or otherwise

allege that she was demoted. Plus, Defendant Jernigan specifically testified that Plaintiff was not removed as a voting member of the committee on which she served, suggesting that she was not demoted. Rec. Doc. 60-3 at ¶ 5. Without more, an allegation that she was no longer acknowledged as an expert is insufficient to satisfy the third prong.

Second, she alleges that her work product was "dismissed." Rec. Doc. 53 at 18. Specifically, she stated that

> The CPO directed [Plaintiff] to conduct reference checks for each of the shortlisted vendors. However, upon presenting the reference checks during a Selection Committee meeting, [Plaintiff's] work product were [sic] dismissed and questioned by the Technical Review Committee even though all sources contacted were credible. It was noted that 80 percent of these reference checks showed that the Technical Review Committee's pre-selected vendor had a history of poor performance . . . . [Plaintiff's] review found that the Technical Review Committee's pre-selected vendor's pricing was over $916K more per year. First Deputy Mayor and Chief Administrative Officer, Andrew Kopplin, openly dismissed [Plaintiff's] findings and tasked the Technical Review Committee with presenting additional information for the Selection Committee to consider. This action by Kopplin was made in hostility to [Plaintiff], dishonored her work product and efforts, diminished her stature in the workplace, alienated her and reduced her authority, and ultimately caused another unnecessary delay with selecting a new vendor.

*Id.* Again, this does not constitute an ultimate employment decision. Plaintiff does not allege that she was demoted. In fact, her allegations merely suggest that the committee wanted to double-check her work before moving forward.

Finally, Plaintiff alleges that she was wrongfully terminated. Rec. Doc. 53 at 23-24, 27-30, 32-34. This does amount to an adverse employment action. However, Defendants argue that Plaintiff was replaced by an African American applicant. *See* Rec. Doc. 60-1 at 8-9. Even though Defendants do not support this argument with evidence, it is Plaintiff's burden to establish a prima facie case and she has failed to even allege that she was replaced by someone outside the protected class. She also failed to establish that she was treated less favorably than similarly situated employees. The closest she gets is alleging in her amended complaint that there "existed a palpable racial animus against her and other Black employees . . . ." Rec. Doc. 53 at 11. This is a conclusory allegation. At this stage of the proceedings, Plaintiff should be able to produce a factual basis for her claims.

Nonetheless, even if this allegation was sufficient, Defendants explained the basis for Plaintiff's termination in both a written letter addressed to Plaintiff and in Defendant Jernigan's affidavit. According to the letter, Plaintiff was terminated because a June 2015 OIG Report noted that she was uncooperative and unresponsive during an investigation, she interfered with a department investigation into sexual harassment allegations against a co-worker, she retaliated against another co-worker, and she settled the suspension of a third co-worker without authorization. Rec. Doc. 60-9 at 1. Defendant Jernigan's affidavit

corroborates the letter. Rec. Doc. 60-3. These appear to be legitimate, nondiscriminatory reasons for Plaintiff's termination and Plaintiff has failed to show that these reasons are unworthy of credence or that she was also terminated because of her race.

As to Plaintiff's claims of disability discrimination, the amended complaint merely alleges that the city violated the ADA "by failing to forebear the proceedings involving her January 11, 2016 Termination until after she was recovered from her multiple surgeries and allowed to recover to an extent where she could return to work, and assist her defense in any Termination proceedings." Rec. Doc. 53 at 12. Defendants explain that Plaintiff was referring to pre-termination hearings scheduled in the fall of 2015. Rec. Doc. 60-1 at 10. According to Defendants, Plaintiff "demanded a continuance of the [30-40 minute] pre-termination hearing on five or six occasions, often making a last minute phone call to demand a continuance less than an hour before the scheduled hearing." *Id.* While the first five requests for a continuance were granted, Defendant Jernigan proceeded with the sixth scheduled hearing in December of 2015. *Id.*

Even though Plaintiff refers to numerous surgeries, she fails to detail the type of surgery or any underlying illness or injury. She makes conclusory allegations of discrimination based on some unknown disability, but ultimately completely fails to allege that she has a disability recognized under the ADA.

Turning to the hostile work environment claim, Plaintiff has arguably alleged that she is a member of a protected group and that she was harassed (again, refer to Plaintiff's allegation that there was a palpable racial animus toward African American employees). However, even accepting Plaintiff's conclusory statements about the existence of some racial animus or harassment, she fails to establish that any harassment affected a term, condition, or privilege of employment. Plus, plaintiffs "must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable." *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003) (emphasis added) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)). "The fact-finder must consider the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance." *Id.* (citing *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000)). Here, even if Plaintiff subjectively believed the harassment was severe and pervasive, she provides no evidence to establish that this perception was objectively reasonable.

As to Plaintiff's retaliation claim, Defendants argue that the only possible protected activity alleged by Plaintiff is her whistleblower claim previously dismissed by this Court. Rec. Doc.

60-1 at 11 (citing Rec. Doc. 38).[7] Indeed, in her response memorandum, Plaintiff repeats the facts allegedly giving rise to the whistleblower claim included in her original complaint. Rec. Doc. 74 at 7-10. She argues that after she was "read the 'riot act' for her open objections to the unethical process to select a vendor . . . and it was *strongly recommended* that she 'stop sending emails about this issue,'" she suffered retaliation because she was no longer considered the city's curb management expert and her work product was dismissed. *Id.* at 10-11.

In the retaliation context, an adverse employment decision includes "any action that 'might well have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *McCoy*, 492 F.3d at 559 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Thus, assuming that Plaintiff's alleged attempts to expose conflicts of interest and corruption constitute protected activities, her allegations that she was no longer recognized as an expert, her work was undermined, and that she was wrongfully terminated could each, arguably, constitute adverse employment actions. However, Plaintiff fails to establish that these things are causally related. The first problem is that

---

[7] Defendants note that the only other possible protected activity is Plaintiff's "claim that [her] authority was 'diminished' by Ms. Copeland's act of speaking directly to the parking staff employees at roll calls about Human Resources issues such as promotions." Rec. Doc. 60-1 at 11. It is entirely unclear to the Court how Plaintiff's "diminished authority" could qualify as a protected activity.

her complaints do not provide an adequate timeline of events. She merely alleges that the selection committee convened in 2012, she was terminated in January of 2016, and presumably sometime during the intervening four-year period she was no longer considered an expert and her work was undermined. However, we also know that Defendants offered legitimate, nondiscriminatory reasons for Plaintiff's termination. Plaintiff completely failed to address these reasons. Thus, she failed to establish that the offered bases for any adverse employment action are unworthy of credence or that they were only some of the reasons for any such actions, in addition to retaliation for participation in a protected activity.

### D. PLAINTIFF'S DEFAMATION CLAIMS

To prove defamation in Louisiana, the plaintiff must prove "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Perez v. City of New Orleans*, 173 F. Supp. 3d 337, 353 (E.D. La. 2016) (citing *Costello v. Hardy*, 03-1146, p. 11 (La. 1/21/04); 864 So. 2d 129, 139). Louisiana courts have found that "to plead material facts, a petitioner alleging a cause of action for defamation must set forth in the petition with reasonable specificity the defamatory statements allegedly published by the defendant." *Fitzgerald v. Tucker*, 98-2313 (La. 6/29/99); 737 So. 2d 706, 713 (citations omitted).

Plaintiff's amended complaint alleges that Defendants Jernigan and Copeland "worked to fabricate a perception that [Plaintiff] was not competent or capable of properly or competently performing her job . . . [and] [t]hese fabrications, as well as the public record now rife with accusations of her alleged grounds for termination, as well as her termination, are each separate items of defamation . . . ." Rec. Doc. 53 at 12-13.

Defendants assume Plaintiff is referring to the grounds for termination asserted in her notice of termination letter and note that city employers are required to "state the reasons for any disciplinary action, including termination, in writing to any classified employee within five days of the effective date of the disciplinary action." Rec. Doc. 60-1 at 15 (citing Civil Service Rule IX, Section 1.3, which provides that "[i]n every case of termination . . . of any employee in the classified service . . . within five (5) working days of the effective date of the action, the appointing authority shall furnish the employee . . . a statement in writing of the reasons therefor").[8] Defendants note that this termination letter was sent directly to Plaintiff and provided to the civil service, as required by civil service rules, and therefore was not published to a third party. *Id.* at 16. Otherwise, Defendants maintain that Plaintiff has failed to

---

[8] These rules are available for download at the City of New Orleans website, https://www.nola.gov/civil-service/resources/rules/.

identify any specific statement that she believes was defamatory. *Id.*

The Court agrees with Defendants' assessment that the only specific statements identified by Plaintiff are those regarding the basis for her termination. Therefore, these are the only statements that will be considered by the Court. However, Plaintiff has produced no evidence that these statements are false. In fact, she has completely failed to specifically address the various reasons given for her termination in either the termination letter or Defendant Jernigan's affidavit. It was Plaintiff's burden to produce evidence of defamation and she failed to satisfy that burden.

### III. **PLAINTIFF'S RULE 60 MOTION**

Plaintiff argues that this Court improperly dismissed her age discrimination claims on the mistaken belief that, even though those claims were asserted in her first EEOC charge, they were not alleged in her original complaint. Rec. Doc. 62 at 1-2 (citing Rec. Docs. 1 at 19; 38 at 8).

Under Federal Rule of Civil Procedure 60(b)(1), "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect . . . ." FED. R. CIV. P. 60(b)(1). Such a motion "must be made within a reasonable time—and . . . no more than a year after the entry of

the judgment or order or the date of the proceeding." FED. R. CIV. P. 60(c)(1). However, motions to reconsider are "extraordinary" remedies and are "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (citations omitted). Ultimately, these motions "are directed to the sound discretion of the district court, and their denial will be set aside only for abuse of discretion." *United States v. Cornejo*, No. 16-20547, 2017 WL 629276, at *1 (5th Cir. Feb. 15, 2017) (citing *Smith v. Alumax Extrusions, Inc.*, 868 F.2d 1469, 1471 (5th Cir. 1989)).

Plaintiff's original complaint spans an unorganized and rambling twenty-four pages. However, on page 19, in section XI, Plaintiff alleged the following:

> The said incidents of wrongful termination, discrimination in employment, hostile work environment, all cited above, along with resulting injuries sustained by your Petitioner Zepporiah Edmonds, were caused solely, directly, and proximately through the fault of the defendants, City of New Orleans, Mark D. Jernigan and Linda Copeland, and any potentially [sic] other supervisors or co-workers, and by lawful extension their insurers, in the following particulars:
>> A. Defendant City of New Orleans' failure to maintain proper vigilance and supervision of its supervisory employees Mark D. Jernigan and Linda Copeland, who intentionally, wrongfully and illegally targeted your petitioner for a groundless and baseless pattern of harassment, defamation and slander, <u>blatant and open age discrimination</u>, eventual wrongful termination, and created a hostile working environment prior to the wrongful termination . . . .

Rec. Doc. 1 at 19 (emphasis added). This is the only time in the complaint that Plaintiff alleges age discrimination. Otherwise, the complaint does not allege any facts that could possibly be construed as giving rise to a claim for age discrimination.

After this Court's July 27, 2016 Order, Plaintiff had an opportunity in her original motion for reconsideration under Rule 59(e) to alert the Court to its mistaken belief that the original complaint did not allege age discrimination. *See* Rec. Doc. 39. Instead, apparently also unaware that the complaint contained this single reference to age discrimination, Plaintiff informed the Court that

> Age Discrimination were [sic] not included as part of her Federal lawsuit in an oversight, and plaintiff seeks leave to amend her Federal lawsuit to add this claim and have this Court via this motion allow amendment that would allow the same. The inclusion of the claims of Age Discrimination in the EEOC Complaint predicate to this Federal lawsuit and the mere oversight of omitting same from her Federal lawsuit, should not bar that claim given her predicate explanation and claim made to the EEOC, as well as her Federal lawsuit and complaint allowing claims for Disability Discrimination and Wrongful Termination.

Rec. Doc. 39-1 at 7.

Further, while Plaintiff's original EEOC charge alleged age discrimination in a conclusory fashion (*see* Rec. Doc. 60-4 at 1), neither of her other two EEOC charges allege age discrimination (*see* Rec. Docs. 60-7 at 1-2; 60-8 at 1).

Plaintiff previously had an opportunity to alert the Court to the age discrimination allegation in the original complaint. A second motion for reconsideration, set for submission less than three weeks before the final pretrial conference, is not the appropriate vehicle for rehashing arguments that could have been made earlier.

More importantly, though, even if the Court were inclined to grant Plaintiff's motion and recognize the age discrimination claim alleged in the original complaint, the claim would fail to survive Defendants' pending motion for summary judgment. Like other forms of discrimination, Plaintiff would have to

> establish a prima facie case of age discrimination by showing that (1) [s]he was discharged; (2) [s]he was qualified for the position; (3) [s]he was within the protected class at the time of discharge; and (4) [s]he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of [her] age.

*Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015) (quoting *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005)). The burden then shifts to the employer to provide a legitimate, nondiscriminatory basis for the termination. *Id.* (citing *Machinchick*, 398 F.3d at 350). Then, the employee must prove by a preponderance of the evidence that the reasons offered by the employer were a mere pretext. *Id.* (quoting *Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 231 (5th Cir. 2015)). Here, Plaintiff has produced no evidence that the offered bases for her termination

were mere pretexts. Therefore, granting Plaintiff's motion to reinstate her age discrimination claim would be futile.

## IV. **PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL**

Plaintiff seeks to disqualify Elizabeth Robins, lead counsel for Defendants, because Plaintiff listed Ms. Robins as a "vital witness in testing the credibility of certain defendants named herein, given the plainrtiff [sic] recently coming into possession of voice recordings that include certain defendants and Ms. Robins which will be important to the plaintiff's claims heard herein . . . ." Rec. Doc. 63 at 2. Apparently, there are "voice mail tapes legally recorded by third parties that were in conversations with Ms. Robins, who recorded her disparaging and questioning the accuracy, memory, competence and credibility of those defendants personally named defendants here . . . ." *Id.*

Defendants respond that Plaintiff never called Ms. Robins as a witness during the hearings before the CSC in the fall of 2015 or during the ten months of appeal hearings from March of 2016 through January of 2017. Rec. Doc. 71 at 1. They also argue that any communications between Ms. Robins and DPW employees, including Defendants Jernigan and Copeland, are subject to attorney-client privilege. *Id.* at 2.

Neither party cited any law. However, "[m]otions to disqualify are substantive motions affecting the rights of the parties and are determined by applying standards developed under

*federal law.*" *In re Am. Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992) (emphasis in original) (citations omitted). "Federal courts may adopt state or ABA rules as their ethical standards, but whether and how these rules are to be applied are questions of federal law." *Id.* Thus, "disqualification cases are governed by state and national ethical standards adopted by the court." *F.D.I.C. v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1312 (5th Cir. 1995) (quoting *Am. Airlines*, 972 F.2d at 605). However, while these standards are "a useful guide for adjudicating motions to disqualify, they are not controlling." *Id.* at 1314.

"In general, it has been a long-standing ethical rule that an attorney may not serve as both an[] advocate and a witness in the same litigation." *P & J Daiquiri Café, Inc. v. Andrew K. Knox & Co.*, No. 07-6617, 2008 WL 731030, at *1 (E.D. La. Mar. 17, 2008) (citing *F.D.I.C.*, 50 F.3d at 1311 & n.8). When considering a motion to disqualify under this rule, district courts should generally consult the Local Rules, the rules governing attorneys practicing in the state jurisdiction (here, the Louisiana State Bar Association's Rules of Professional Conduct), and the American Bar Association's Model Rules of Professional Conduct. *Id.* (citations omitted); *see also CEF Funding, L.L.C. v. Sher Garner Cahill Richter Klein & Hilbert, L.L.C.*, No. 09-6623, 2010 WL 2773116, at *1 n.11 (E.D. La. July 9, 2010). Local Rule 83.2.3 adopts the Louisiana Rules, which, in this case, reflect the Model Rules.

Nonetheless, "[c]ourts are cautioned that they should apply the rules related to disqualification flexibly, and should take into account the social interests at stake including the right of a party to its counsel of choice and an attorney's right to freely practice her profession." *P & J Daiquiri Café*, 2008 WL 731030, at *3 (citation omitted).

Rule 3.7 of the Louisiana and Model Rules provides, in relevant part, that "a lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless: (1) the testimony relates to an uncontested issue; . . . or (3) disqualification of the lawyer would work substantial hardship on the client." To determine if a lawyer is likely to be a "necessary witness," the party moving for disqualification generally must show (1) "[t]he attorney will give evidence material to the determination of the issues being litigated;" (2) "[t]he evidence cannot be obtained elsewhere;" and (3) "[t]he testimony is prejudicial or potentially prejudicial to the testifying attorney's client." *Crutchfield v. Ringler Assocs. New Orleans, Inc.*, No. 01-2720, 2002 WL 726646, at *3 (E.D. La. Apr. 24, 2002) (quoting *Michel v. Miller*, No. 97-2419, 1998 WL 42887, at *3 (E.D. La. Jan. 30, 1998)).

Here, Plaintiff provides little information regarding the content of these tapes, other than to suggest that they may undermine Defendants' credibility. Thus, even though Plaintiff has

alleged that the evidence is prejudicial to Defendants, it is unclear whether or not these tapes would be admissible in light of attorney-client privilege. In any event, Plaintiff's motion is rendered moot by the fact that the Court is granting Defendants' motion to dismiss Plaintiff's claims.

## V.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' motion (Rec. Doc. 60) is **GRANTED.** At this stage of the proceedings, Plaintiff should be able to produce more than her own self-serving testimony from her verified original and amended complaints. Yet, she fails to produce such evidence to establish prima facie cases for each of her claims. In other words, Plaintiff failed to present a genuine issue of material fact under Rule 56. Therefore, Plaintiff's claims are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Plaintiff's motion for reconsideration (Rec. Doc. 62) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's motion to disqualify counsel (Rec. Doc. 63) is **DISMISSED AS MOOT.**

New Orleans, Louisiana, this 19th day of June, 2017.

_____
SENIOR UNITED STATES DISTRICT JUDGE