# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF THE STATE OF LOUISIANA

| | |
|---|---|
| **Zepporiah Edmonds** | **CIVIL ACTION  No.    16  cv  00298** |
| **VERSUS** | **JUDGE:**           I. Lemelle |
| **City of New Orleans,<br>Mark D. Jernigan and<br>Linda Copeland** | **MAGISTRATE:**     D. Knowles |

## Affidavit of Petitioner ZEPPORIAH EDMONDS in Support of her Reply Memorandum to Defendants' Opposition to her Motion for Reconsideration

I, ZEPPORIAH EDMONDS, file the following Affidavit in Support of my Reply Memorandum to Defendants' Opposition to my Motion for Reconsideration of this Court's dismissal of my claims pursuant to Doc. 85 in this matter.  This additional Affidavit, and my attestations contained therein, are filed in light of those objections raised by the defendants in seeking to strike or disallow certain Exhibits sought entered into evidence on my behalf in my Memorandum in Support of My Motion for Reconsideration filed this past September 4, 2017,  and in seeking to admit additional exhibits sought considered by the Court here in rebuttal to the defendants' argument and objections filed in their Opposition Memorandum filed on September 12, 2017 to my seeking a Reconsideration of that earlier dismissal of all of my claims.

**Rebuttal to Objections to Certain non-Civil Service Record items of Evidence:**

Those records NOT contained within the transcripts or exhibits of the Civil Service Appeal Hearings held on my behalf are all explained by me here to be records that were related to my employment with the DPW, or are from my personal e-mail records or papers, or, are my personal medical records or instructions provided to me by my healthcare providers and sought admitted here to explain to the Court my actual illness or time missed from the workplace due to illness. An explanation as to the origins and authenticity of each item are as follows:

**Items included in my Original Memorandum in Support of Reconsideration:**

a.)   Reconsideration Memorandum Exhibit # 4 ("Recon. Memo. Exh. 4").  This item was entered into evidence as Civil Service Appeal Record ("CS Record") Appellant's Exh. #34, at the hearing date of 12/14/2016. As part of the certified CS Record, the defendants' objection here is moot.

b.)   Recon. Memo. Exh. 5  -  This item was also entered into evidence as Civil Service Appeal Record ("CS Record") Appellant's Exh. #34, which contained multiple items, at the hearing date of 12/14/2016. As part of the certified CS Record, the defendants' objection here is moot.

c.)   Recon. Memo. Exh. 10.  This item was also entered into evidence as Civil Service Appeal Record ("CS Record") Appellant's Exh. #33, at the hearing date of 12/14/2016. As part of the certified CS Record, the defendants' objection here is moot.

d.)   Recon. Memo. Exh. 11 -   This item was also entered into evidence as Civil Service Appeal Record ("CS Record") Appellant's Exh. #30, at the hearing date of 12/14/2016. As part of the certified CS Record, the defendants' objection here is moot.

e.) Recon. Memo. Exh. 12 -  This item was also entered into evidence as Civil Service Appeal Record ("CS Record") as part of Appellant's Exh. #33, which contained multiple items, at the hearing date of 12/14/2016. As part of the certified CS Record, the defendants' objection here is moot.

f.) Recon. Memo. Exh. 13  This item was also entered into evidence as Civil Service Appeal Record ("CS Record") at the hearing date of 12/14/2016 (pg. 39, lines 21-22) with this being an item quoting Deputy Mayor Cedric Grant as stating by written comment in his own hand "I need to see her (Edmonds) today". As part of the certified CS Record, the defendants' objection here is moot.

g.) Recon. Memo. Exh. 14 -  This item was also entered into evidence as Civil Service Appeal Record ("CS Record") as part of Appellant's Exh. #33, which contained multiple parts, at the hearing date of 12/14/2016. As part of the certified CS Record, the defendants' objection here is moot.

h.) Recon. Memo. Exh. 16 – This item was prepared by me, in my own hand, in the course and scope of my employment as Parking Administrator, and I kept a copy of this document for my personal records.  It is unaltered from its original form.

i.) Recon. Memo. Exh. 16A – This item was prepared by me, in my own hand, in the course and scope of my employment as Parking Administrator, and I kept a copy of this document for my personal records.  It is unaltered from its original form.

j.) Recon. Memo. Exh. 25 -  This item was also entered into evidence as Civil Service Appeal Record ("CS Record") as part of Appellant's Exh. #23, which contained multiple parts, at the hearing date of 11/3/2016. As part of the certified CS Record, the defendants' objection here is moot.

k.) Recon. Memo. Exh. 26 -  These items were produced by the Petitioner in her own hand as complaints by her made in writing to the Civil Service, the Mayor's Office, and

the Ethics Board.  They are unaltered from their original form.  These items were all also entered into evidence as Civil Service Appeal Record ("CS Record") as part of Appellant's Exh. #26, parts 1, 2 and 3, which contained multiple parts and letters written by Petitioner to various agencies offering her complaints of mistreatment, retaliation and harassment, at the CS hearing date of 12/16/2016. As part of the certified CS Record, the defendants' objection here is moot.

**Items included in my Reply Brief response to Defendants' September 12, 2017 Memorandum in Opposition of Petitioner's Motion for Reconsideration:**

a.)   Reply Brief Exhibit #4 - Medical Records and Instructions received by me on 10/31/2012 relative to surgery.  These items are unaltered from their original state and are put into this record by me despite the highly sensitive nature of such information, and done so to inform this Court of the severity of my disability, the fact of my multiple surgeries during this time period coinciding with my being subjected to hostility and retaliation and discrimination in the workplace, as well as my extended absences from the workplace where I was allowed to work from home for extended periods of time.

b.)   Reply Brief Exhibit #5 -  Medical Records and Instructions received by me on in August, 2014 relative to surgery and treatment.  These items are unaltered from their original state and are put into this record by me despite the highly sensitive nature of such information, and done so to inform this Court of the severity and duration of my disability, the fact of my multiple surgeries during this time period coinciding with my being subjected to hostility and retaliation and discrimination in the workplace, as well as my extended absences from the workplace where I was allowed to work from home for extended periods of time.

c.) Reply Brief Exhibit # 6 -  This is an Internal DPW Grievance Form filed by me and given to my superior Mark Jernigan on July 13, 2015 memorializing my complaints of a Hostile Work Environment, Threats made by co-worker Linda Copeland against myself and co-workers for refusing to illegally release her friend's vehicle from the Auto Pound after it was towed for illegally parking, as well as Copeland undermining my authority with my subordinates by creating hostility and unhappiness amongst these employees.  This document was copied to my personal records, is not altered or changed from its original form, and should be in the defendants' records also.

d.) Reply Brief Exhibit # 7 - This is an Internal DPW Grievance Form filed by me given to my superior Mark Jernigan on July 15, 2015 memorializing my complaints of there being a corruption of the mandatory Ethics Training of Parking Division employees by one of our subordinates charged with supervising that training. When I attempted to correct this problem the subordinate began to wrongfully accuse me of causing the corruption of the Ethics Training, and furthered the creation of a Hostile Work Environment for myself in the workplace. Superior Jernigan did nothing to assist the worsening of this situation and allowed to fester, I believe, in retaliation of my earlier complaints and grievances that began and escalated upon my complaining about the Curb Management contract process. This document was copied to my personal records, is not altered or changed from its original form, and should be in the defendants' records also.

**My Absences from the Workplace in 2012, 2013 and 2014 explaining the temporary gaps in Harassment and Retaliation originating with my reports of Unethical Activity in the Curb Management Contact process.**

I respectfully submit the following timeline of 2012 until my Termination on January 11, 2016, explaining to the Court my medical challenges and how they led to frequent and extended work from home, which was approved by my superiors until the 2015 effort began in earnest to push me out of my position in retaliation for expressing concerns about the Landrieu Administration's unethical favoring of Duncan Solutions over other vendors, as well as their retaliation against me for making complaints and grievances to my immediate superior, defendant Jernigan, as well as in retaliation for the two EEOC complaints made by me in April, 2014 and July, 2015.

**TIMELINE:**

Oct. 31, 2012 – I had surgery for a bi-lateral ureter re-implantation and bladder puncture.  I was diagnosed as suffering from Vesicoureteral Reflux (VUR) resulting from a bi-lateral ureter injury and a bladder puncture that I sustained on October 31, 2012.  I underwent a nine hour surgery to mitigate the major damage done to my bladder and a re-implantation of my ureters.  It was and is my understanding that this type of injury and disability is covered by the ADA Amendment Act of 2008.

November, 2012 – January 2013 - I was allowed by my supervisor, Mark Jernigan, to work from home managing the Parking Division and the employees under my supervision.  This did work well, despite harassment and criticism from political operatives in the Landrieu Administration retaliating against me for expressing my concerns about what I perceived as the Administration's attempt to rig or award the lucrative Curb Management Contract to a favored, particular vendor. Nonetheless, I am allowed to manage my employees from home while out seriously ill, and to earn Superior

6

Job Performance ratings from my immediate superior, Mr. Jernigan, for the years 2012 and 2013.

Feb. 2013 – Returned to regular work at DPW/Parking Division offices, and treated my non-emergency medical condition by using my physician-approved self-catheters;

March/April, 2013 – At this period I was having chronic UTI's; frequent doctor's visits;

April 2013 - Surgery to rectify bladder obstruction and to relieve the discomfort of catheterizing; I was without deviation allowed to work from home, approved by my immediate supervisor, Mark Jernigan;

Late May/Early June 2013 - Returned to work with same medical conditions; surgery was not successful. Continued to use catheters, suffered with frequent UTI's due to bladder puncture;

June 2013-Dec. 2013 - Spent a significant amount of time dealing with my medical condition. Diagnosed with irreversible nerve damage to bladder. Frequent early departures or late arrivals due to treatment and therapy for medical condition. Received medical attention at both Tulane University Medical campuses (Lakeside and Downtown);

Jan. 2014 - Mar. 2014 - Explained to Mark Jernigan that I was under consideration for additional surgery due to bladder obstruction, given the multiple surgeries already occurring to date;

Apr. 2014 - June 2014 - Began to suffer from debilitating issues with my bladder obstruction and excruciating back pain. Work being criticized; Copeland's undermining efforts in full swing;

July 2014 - Underwent treatment for debilitating issues with bladder.  Kidney functions are now under medical observation; reports were being submitted weekly and sometimes daily;

Aug. 2014 - Diagnosed with VUR - I spent a significant amount of time at the hospital. Treatment path and reconstructive surgery were discussed and assessed. Jernigan was notified and advised of my medical condition. Harassment and retaliation had begun to escalate in my workplace.

Sept. 2014 - Spent a significant amount of time undergoing treatment and study for debilitating issues with bladder issues and recurring UTI's.  Began to undergo treatment for kidneys.  Harassment became increasingly intense. Filed an official Employee Grievance on September 26, 2014 through my Chain of Command.

Oct. 2014 - Jan. 2015 - UNABLE TO WORK. Planning for reconstructive surgery.  Harassment and retaliation increase to an untenable level. Filed first EEOC Complaint with that agency (Nov. 4, 2014); Requested to work from home due to vacancies in my Division and ongoing OIG Investigations.  My request was denied despite earlier history of performing well from home.  NOT ALLOWED TO WORK FROM HOME WHEN UNABLE TO REPORT.

8

Feb. 2015 - Reported back to work; provided Mark Jernigan with a detailed list of my medical appt.  Harassment and Retaliation immediately resumed.

March 2015 - June 2015 - UTI's reoccurred; along with unbearable back pain. Continued to use catheter due to bladder obstruction.  VUR worsened health; now began to suffer kidney infections.  Was informed by Doctor that surgery was my only medical recourse.  Jernigan was informed.  Harassment and retaliation at an unendurable level.

July 2015 – I began suffering a very debilitating medical condition, my doctor advised me to take medical leave until surgery.  In follow-up to constant Harassment, Hostile Working Environment, and Racial Discrimination against myself, I filed a second EEOC Complaint with that agency;

Aug. 2015 - Pre-termination hearing notices started arriving at my home seeking to set up a Pre-Termination Hearing predicate to terminating me and removing me from employment with the DPW.  I could not attend those hearings due to my illness and disability, and properly forwarded supporting medical information to the proper authorities with the City of New Orleans and the DPW. As soon as the DPW agreed to postpone the hearings, they would immediately reschedule the Pre-Termination Hearing in the too-near future, despite my medically-reasoned restrictions, and would schedule the new hearing date purposefully within my window of medically-ordered restricted activities, despite having been provided the documentation that I not am made to appear, and instead be accommodated.  The DPW refused to accommodate me in this request, and eventually held a hearing to terminate me on December 14, 2015, with my actual Termination notice effective January 11, 2016.

9

**<u>The Racially Disparate Treatment of myself in comparison to that of White co-worker Linda Copeland played an integral part of my filing my First and Second EEOC Complaints against my employer, the DPW as well as the defendants Jernigan and Copeland.</u>**

My first two EEOC Complaints, filed on November 4, 2014 and July 15, 2015 (see Reply Brief Exhs. #8 and #9), were filed prior to my actual wrongful termination from my position at the DPW, were filed claiming Discrimination based upon Race, as evidenced by the actual documents filed and part of this Court Record.  These particular claims made by me to the EEOC, as predicate to filing this lawsuit, and were grounded in my superior, DPW Dept. Head Mark Jernigan,  over an extended period of time and during many different episodes and circumstances blatantly and obviously treated his two Senior Level employees extremely differently – with myself, a Black woman, being subject to undue scrutiny, criticism, alienation and ultimately retaliation based, made-up Termination  for no good reason despite superior Job Performance ratings (Exh. 2), while Linda Copeland, who abused employees, threatened employees, either recklessly or intentionally created havoc in the Parking Division by inappropriately and with zero authority promising Parking Administration employees <u>under my supervision and direction</u> fictitious promotions, pay raises and additional uniform allowances, and she was instead promoted and given a significant pay raise, despite employees repeatedly putting Mr. Jernigan on notice of her negative behavior.

In contrast, I was personally subject to micro-scrutiny by Mr. Jernigan, as explained in detail in my original Affidavit and in the evidence submitted in my original Memorandum in Support of my Motion for Reconsideration. Again, my reward for a job well done and for reporting unethical activity was my being <u>Terminated</u> for ridiculous, made-up, fictitious charges since adjudicated as groundless and inappropriate reasons

10

for my termination by the Civil Service Commission and the Hearing Examiner – after NINE DAYS of hearing testimony, many witnesses, and dozens of exhibits entered into record.  My termination came after superior Performance Ratings and properly managing low-paid workers and getting them to perform at a high level – as opposed to my White peer Linda Copeland who had a demonstrable pattern of mistakes, problems, fomenting issues with the workforce, and Jernigan instead promoted her with a pay raise, while I get harassed, alienated, then Terminated. One person controlled the outcome of both situations – Mr. Mark Jernigan – a White male.  I, a Black woman, performed at a high level and was eventually Terminated.  Ms. Copeland, a White woman, performed at a less superior level and was promoted with a pay raise. Again, Racial Discrimination via this proven disparate treatment was the hinge separating my fate from Ms. Copeland's.

**Due Process Violations and the failure of the Employer to properly accommodate my request to postpone the Pre-Termination Hearing of December 14, 2015, are in direct violation of the ADA, as my illness is one recognized by the ADA.**

I was physically unable to attend due to illness the December 14, 2015 Pre-Termination Hearing at which a hearing was held in my absence and where I was Terminated.  The employer had received medical orders restricting my activities that I not attend that hearing, and consciously chose to go forward with that hearing in violation of the ADA rules requiring they make accommodations for my illness and reschedule the hearing for a later date that I could participate in and defend myself. This act by the defendant employer is in strict violation of the ADA, the ADA Amendment Act of 2008, and controlling case law.

The attached E-mail from City of New Orleans ADA Administrator Paige McCranie to DPW Head Mark Jernigan recommending the department make accommodations for

11

my illness by postponing the hearing weighs in favor of a finding that the Employer violated the ADA requirements as well as my Due Process rights in going forward with the hearing. Attached Recon. Memo. Exhibit 25 contains several communications between myself, my attorneys and the defendant employer almost begging them to delay the December 14, 2015 hearing, with medical documentation of my ordered absence attached thereto. Mr. Jernigan seemed intent upon going forward with my Termination, justice or rules be set aside. And that he did. This Court should correct this.

**My Difficulties and Inability to obtain additional or Alternative Legal Counsel to Represent me after this Court's dismissal of my case on June 19, 2017 due to financial hardships and difficulties making the necessary payment of a Retainer Fee impossible:**

After learning of my attorney, Dominic N. Varrecchio's serious illness and hospitalization, I spoke with my former attorney Willie Zanders to explore the possibility of retaining new or additional counsel because I did not know whether or not Mr. Varrecchio would be able to meet all of the deadlines and perform the task of reviewing and digesting my entire Civil Service hearing transcript prior to the September 5, 2017 deadlines. Mr. Zanders informed me that attorneys generally did not desire taking over cases from other attorneys, but that even if I found one in need of additional new cases, almost no attorney well-versed in Employment Law would take my case on a Contingency Fee basis because my case had been dismissed by a Federal Judge, that the prospects of getting back into to Court on an appeal or Reconsideration were very unsure, and that no such attorney would get involved with reading an entire 1600 page Civil Service Hearing record, compile a memorandum and exhibits and stop what they were doing to meet the Federal Court's deadline, without having a substantial, non-refundable Retainer Fee paid by me up front of maybe $5,000-$7,500. At this point in

my life I had been terminated from my position with the DPW for about 80 weeks, was living on a very limited "forced retirement" income, about one half of my regular salary, and was suffering severe financial hardships effecting every aspect of my family's life. I simply could not afford to pay a new attorney the required $5,000 - $7,500, and I discussed this problem with my current attorney Mr. Varrecchio. He said that from the hospital he had tried to find additional attorneys to assist him or take over my case, and that all of them worth having (that understand Employment Law) would require a non-refundable payment of about $5,000 prior to enrolling and obligating themselves to review the extensive Civil Service hearing record. Mr. Varrecchio resolved to help me keep looking for additional counsel, with no success. We then resolved to keep Mr. Varrecchio as my attorney, and try to work through his illness on the current Contingency Fee basis arrangement that I have had with him from the beginning of his involvement representing me here. I resolved to assist him in reviewing and finding helpful Exhibits and records from the Civil Service record to the Court via my attachments as Exhibits to my memoranda filed in support of the Court Reconsidering the Dismissal of my case. Additionally, over the past many weeks I was able to assist Mr. Varrecchio by helping him review the Civil Service transcripts for helpful witness testimony included here, and I also reviewed the lengthy Civil Service Commission decision and the Hearing Examiner's Report to find helpful portions of those items to be presented to the Court. I have discontinued my assistance to Mr. Varrecchio except for very limited involvement as the defendant DPW was ordered on September 5, 2017 for me to be reinstated by the DPW to my position as Parking Administrator, and I reported back to work on September 11, 2017 - via the Civil Service Commission's decision on my Appeal to have the defendant City of New Orleans/DPW immediately reinstate me to the position that I was proven to be wrongly terminated from.

The preceding is true and correct to the best of my recollection and belief.

Sworn and attested to by me, ZEPPORIAH EDMONDS, this 5th day of September, 2017.

Signed _____*Zepporiah A. Edmonds*_____
ZEPPORIAH EDMONDS  -   AFFIANT

Sworn and attested to before me, Dominic N. Varrecchio, Notary Public, Louisiana Bar No. 19456,   this 5th day of September, 2017, in New Orleans (Orleans), Louisiana.

Respectfully submitted,

_____
Dominic N. Varrecchio (# 19456)
300 Lafayette Street, Suite 103
New Orleans,  LA  70130
Telephone:  (504) 524-8600
Email: knic55@cox.net
*Attorney for Plaintiff Zepporiah Edmonds*

<u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the above and foregoing has been served upon counsel for all parties by the USDC Court Electronic Filing System, this 18th of September, 2017.

*Dominic N. Varrecchio*

_____
DOMINIC N. VARRECCHIO