# CITY OF NEW ORLEANS



DEPARTMENT OF CITY CIVIL SERVICE
SUITE 900 – 1340 POYDRAS ST.
NEW ORLEANS LA 70112
(504) 658-3500   FAX NO. (504) 658-3598

CITY CIVIL SERVICE COMMISSION

MICHELLE D. CRAIG, CHAIRPERSON
RONALD P. MCCLAIN, VICE-CHAIRPERSON
TANIA TETLOW
STEPHEN CAPUTO
CLIFTON MOORE, JR.

LISA M. HUDSON
DIRECTOR OF PERSONNEL

MITCHELL J. LANDRIEU
MAYOR

Thursday, November 16, 2017

Mr. Dominic N. Varrecchio
300 Lafayette Street, Suite 103
New Orleans, LA 70130

Re:   **Zepporiah Edmonds VS.**
**Department of Public Works**
**Docket Number:  8444**

Dear Mr. Varrecchio:

Attached is the decision of the City Civil Service Commission in the matter of your appeal.

This is to notify you that, in accordance with the rules of the Court of Appeal, Fourth Circuit, State of Louisiana, the decision for the above captioned matter is this date - 11/16/2017 - filed in the Office of the Civil Service Commission at 1340 Poydras St. Suite 900, Orleans Tower, New Orleans, Louisiana.

If you choose to appeal this decision, such appeal must conform to the deadlines established by the Commission's Rules and Article X, 12(B) of the Louisiana Constitution. Further, any such appeal shall be taken in accordance with Article 2121 et. seq. of the Louisiana Code of Civil Procedure.

For the Commission,

*Doddie K. Smith*

Doddie K. Smith
Chief, Management Services Division

cc:   Dani E. Galloway
Elizabeth S. Robins
Jim Mullaly

file

# CITY OF NEW ORLEANS

DEPARTMENT OF CITY CIVIL SERVICE
SUITE 900 – 1340 POYDRAS ST.
NEW ORLEANS LA 70112
(504) 658-3500  FAX NO. (504) 658-3598

CITY CIVIL SERVICE COMMISSION

MICHELLE D. CRAIG, CHAIRPERSON
RONALD P. McCLAIN, VICE-CHAIRPERSON
TANIA TETLOW
STEPHEN CAPUTO
CLIFTON MOORE, JR.

MITCHELL J. LANDRIEU
MAYOR

Thursday, November 16, 2017

LISA M. HUDSON
DIRECTOR OF PERSONNEL

Mr. Dominic N. Varrecchio
300 Lafayette Street, Suite 103
New Orleans, LA 70130

Re: **Zepporiah Edmonds VS.**
**Department of Public Works**
**Docket Number: 8467**

Dear Mr. Varrecchio:

Attached is the decision of the City Civil Service Commission in the matter of your appeal.

This is to notify you that, in accordance with the rules of the Court of Appeal, Fourth Circuit, State of Louisiana, the decision for the above captioned matter is this date - 11/16/2017 - filed in the Office of the Civil Service Commission at 1340 Poydras St. Suite 900, Orleans Tower, New Orleans, Louisiana.

If you choose to appeal this decision, such appeal must conform to the deadlines established by the Commission's Rules and Article X, 12(B) of the Louisiana Constitution. Further, any such appeal shall be taken in accordance with Article 2121 et. seq. of the Louisiana Code of Civil Procedure.

For the Commission,

Doddie K. Smith
Chief, Management Services Division

cc: Dani E. Galloway
Elizabeth S. Robins
Jim Mullaly

file



# CITY OF NEW ORLEANS

DEPARTMENT OF CITY CIVIL SERVICE
SUITE 900 – 1340 POYDRAS ST.
NEW ORLEANS LA 70112
(504) 658-3500   FAX NO. (504) 658-3598

CITY CIVIL SERVICE COMMISSION

MICHELLE D. CRAIG, CHAIRPERSON
RONALD P. McCLAIN, VICE-CHAIRPERSON
TANIA TETLOW
STEPHEN CAPUTO
CLIFTON MOORE, JR.

MITCHELL J. LANDRIEU
MAYOR

Thursday, November 16, 2017

LISA M. HUDSON
DIRECTOR OF PERSONNEL

Mr. Dominic N. Varrecchio
300 Lafayette Street, Suite 103
New Orleans, LA 70130

Re:   **Zepporiah Edmonds VS.**
      **Department of Public Works**
      **Docket Number:  8485**

Dear Mr. Varrecchio:

Attached is the decision of the City Civil Service Commission in the matter of your appeal.

This is to notify you that, in accordance with the rules of the Court of Appeal, Fourth Circuit, State of Louisiana, the decision for the above captioned matter is this date - 11/16/2017 - filed in the Office of the Civil Service Commission at 1340 Poydras St. Suite 900, Orleans Tower, New Orleans, Louisiana.

If you choose to appeal this decision, such appeal must conform to the deadlines established by the Commission's Rules and Article X, 12(B) of the Louisiana Constitution.  Further, any such appeal shall be taken in accordance with Article 2121 et. seq. of the Louisiana Code of Civil Procedure.

For the Commission,

*Doddie K. Smith*

Doddie K. Smith
Chief, Management Services Division

cc:   Dani E. Galloway
      Elizabeth S. Robins
      Jim Mullaly

      file

"AN EQUAL OPPORTUNITY EMPLOYER"

CIVIL SERVICE COMMISSION
CITY OF NEW ORLEANS

| | |
|---|---|
| ZEPPORIAH EDMONDS<br><br>vs.<br><br>DEPARTMENT OF PUBLIC WORKS | DOCKET Nos.: 8444, 8467 & 8485 |

**ORDER**

On September 5, 2017, the Commission rendered a decision that found that the Appointing Authority, the Department of Public Works for the City of New Orleans (hereinafter "DPW" or "Appointing Authority") lack sufficient cause to terminate Ms. Zepporiah Edmonds. However, the Commission did find that Ms. Edmonds engaged in misconduct that warranted corrective action. Because there were numerous mitigating factors related to the substantiated allegation of misconduct – and since the DPW only substantiated one out of the four original allegations of misconduct against Appellant – the Commission remanded the matter to a hearing examiner. The remand order was for the limited purpose of determining what level of discipline would be appropriate based upon the one substantiated allegation of misconduct.

On September 27, 2017, a referee appointed by the Commission conducted a hearing to collect evidence and testimony regarding the appropriate level of discipline. The undersigned Commissioners have reviewed the transcript of the September 27th hearing as well as the referee's report. Based upon our review, we render the following judgment.

**I. Background**

In conducting its analysis, the Commission must determine what level of discipline would be "commensurate with the dereliction;" otherwise, the discipline would be "arbitrary and capricious." *Waguespack v. Dep't of Police*, 2012-1691 (La. App. 4 Cir. 6/26/13, 5); 119 So.3d

976, 978 (citing *Staehle v. Dept. of Police,* 98–0216 (La. App. 4 Cir. 11/18/98), 723 So.2d 1031, 1033). The misconduct at issue is Appellant's lack of cooperation and responsiveness to an investigation conducted by the Office of Inspector General for the City of New Orleans ("OIG"). The Commission will briefly revisit its factual findings regarding Appellant's misconduct in order to frame its analysis.

The Commission found that an OIG investigator, Eddie Hernandez, requested parking citations issued by Parking Control Officers (hereinafter "PCOs") within a specific geographic area in the CBD. Appellant herself admitted that Investigator Hernandez requested "numerous documents and copies of parking tickets that were issued during a certain time frame near the Federal Complex." (DPW Exh. 12 at p. 2 of 10). Appellant made this admission in a response to the OIG's report that cited Appellant's lack of cooperation in producing the citations. *Id.* Thus, there can be no real dispute that Appellant was aware of the general scope of Investigator Hernandez's request for information.

According to Appellant, she could have produced the citations, or data related to the citations, in one of two ways. First, she could have assigned staff members in the DPW to search through paper records. However, she informed Investigator Hernandez that the DPW did not have the "resources or the manpower to gather [the] information manually" due to the transition to a new operating system. Appellant herself testified that collecting the information Investigator Hernandez requested would have involved DPW employees "digging" through boxes of old citations. (Tr. v. 7 at 26:3-9; Tr. v. 8 at 14-16). Yet, Appellant did not notify either then-DPW Director Mark Jernnigan or Investigator Hernandez that she had not and would not assign DPW staff to retrieve the requested documents after the transition to the new operating system. Instead, Appellant told Investigator Hernandez that she was "embarrassed" that her office had not been

more responsive to his request. (App. Exh. 9 November 12, 2014 email from Appellant to Investigator Hernandez). Despite this embarrassment, there was no evidence that Appellant made any effort to collect responsive documents.

The second manner in which Appellant could have produced the requested information was to ask an outside agency managing Parking Division records to conduct a search through its database. (App. Exh. 10).

Appellant failed to take either action, and by the time the OIG became aware of the opportunity to ask the outside agency to conduct a search of its database, the OIG believed that there was a substantial cost for such a search. The OIG then made the determination that the cost of retrieving such data outweighed its usefulness. Despite testimony to the contrary, the Commission finds that the OIG's decision not to expend additional resources to obtain the requested information suggests that the OIG did not view the information as vital to its investigation. Other factors that call into question the essential nature of the requested information were; 1) Investigator Hernandez's failure to put his initial request for information in writing, and 2) Investigator Hernandez apparently forgot the exact information he had requested as evidenced by his subsequent request to Appellant for a list of the information he had originally requested.

## II. Analysis

The Commission held that Appellant's failure to timely cooperate and respond to requests by Investigator Hernandez was misconduct since it was an omission of an act it was Appellant's responsibility to perform. However, the degree of misconduct did not warrant termination.

### A. Mitigating Factors

There were several mitigating factors at play in Appellant's case, including the following:

- Appellant's thirty-two-year history of employment with the DPW during which she received overwhelmingly positive performance evaluations and did not have any prior discipline.

- Appellant's prior cooperation with OIG Investigations involving Parking Division personnel.

- Appellant's serious personal illness.

- Appellant's prior report to her supervisor that she was "overwhelmed" by her workload.

### *B. Impact on DPW's Efficient Operations*

Another factor that the Commission takes into account when weighing the appropriate level of discipline is the degree to which the misconduct impacted the Appointing Authority's efficient operations. Here, the OIG and DPW were involved in an investigation to determine if PCOs were issuing parking citations to residents in retaliation for being asked to leave local businesses by the proprietors of those businesses. As we noted in our September 5th Order, PCOs are often the only employees of the DPW with whom members of the public regularly interact. They serve a vital function for the enforcement of parking ordinances, but must do so in an ethical and lawful manner. Otherwise, the public loses confidence in the legitimacy of the DPW's actions.

The Commission found that the production of historic citation data related to the specific geographic area described by Investigator Hernandez would have facilitated the investigation into PCO misconduct. As we have already stated, "Appellant and her staff should have done everything in their power to expedite production of any requested records."

### C. Appropriate Level of Discipline

During the course of the September 27th hearing, the Parties attempted to re-litigate aspects of the case that the Commission had already addressed. Appellant argued that no corrective action is warranted because her actions did not constitute actual misconduct. While the Commission appreciates this stance as one taken due to litigation, it is inconsistent with our Order. Some

corrective action is warranted. The question before us is what form of corrective action is appropriate.

The DPW took the position that Appellant's misconduct was egregious and warrants a substantial level of discipline. It suggested that a 166-day suspension and involuntary demotion would be appropriate. The proposed length of suspension is related to the time lapse between the OIG's initial request and Appellant's email to Inspector Hernandez informing him of an alternative way to secure the requested information. The DPW argued that demotion was appropriate because Appellant's failure to respond to the OIG's request was evidence that Appellant either did not appreciate the responsibilities of Parking Administrator, or actively dismissed them.

The Commission finds that conduct by PCOs should be a primary concern for the Parking Administrator and Appellant's inadequate response to the OIG's requests represents a failure on Appellant's part to recognize her responsibility. Appellant could have used the request as an opportunity to do her own review of PCO conduct and should have partnered with Investigator Hernandez to move the investigation forward.

The Commission recognizes that Appellant believed that Investigator Hernandez's request was motivated by a personal dispute with a specific PCO. However, the data at issue covered any PCO who issued a citation within a specific geographic area within the CBD between 2012 and 2014. As Parking Administrator, Appellant would have been in a unique position to produce the data **and** analyze it for any irregular patterns. Such an analysis may not have yielded any concrete evidence of PCOs issuing retaliatory tickets, but neither the DPW nor the OIG had the opportunity to conduct such an analysis.

The Commission does not question Appellant's assertion that the information requested by Investigator Hernandez would have consumed most, if not all, of Appellant's administrative

resources. However, Appellant never put this concern in writing to Investigator Hernandez or Director Jernigan until **after** the OIG released its report. Had she done so, an alternative arrangement regarding the information may have been possible. Therefore, we find that a substantial level of discipline is appropriate.

However, the DPW's suggested level of discipline is too extreme by several degrees. If the Commission believed that discipline in the form of a 166-day suspension and involuntary demotion was appropriate, then so too would termination have been appropriate. Outside of extenuating circumstances, the maximum allowable length of suspension contemplated by our Rules is 120 days. This represents the final level of discipline before termination. While the Commission may modify a termination and instead issue a suspension longer than 120-days, it must articulate concrete reasons for such action. Such reasons are not present here.

Even though the record before us was voluminous, this appeal boiled down to the simple fact that the DPW lacked sufficient cause to terminate Appellant. The DPW's initial decision to terminate Appellant was based upon allegations that were either frivolous or the product of dubious speculation. The Commission thus views this matter like it would any other case in which an Appellant engaged in misconduct that did not warrant termination.

The Commission's authority to "hear and decide" disciplinary cases "includes the authority to modify (reduce) as well as to reverse or affirm a penalty." *Whitaker v. New Orleans Police Dept.*, 863 So.2d 572, 576 (La.App. 4 Cir. 9/17/03)(citing La. Const. art. X, § 12; *Branighan v. Department of Police,* 362 So.2d 1221, 1223 (La.App. 4 Cir.1978)); *Bankston v. Dep't of Fire*, 2009-1016 (La.App. 4 Cir. 11/18/09, 10), 26 So.3d 815, 822 (an appointing authority's failure to properly consider mitigating circumstances rendered a ninety-day suspension arbitrary and capricious). However, the authority to reduce a penalty can only be exercised if there is insufficient

6

cause for imposing the greater penalty. *Id.* The Commission does not exercise this authority lightly.

In *Whitaker supra*, the New Orleans Police Department terminated an officer with an "unblemished record" after substantiating allegations that the officer had operated a vehicle while intoxicated. *Id.* at 574. The Commission denied the officer's challenge to his termination and the officer pursued his appeal to the Fourth Circuit. The Fourth Circuit vacated the termination and acknowledged that the Police Department had established that the officer had violated an internal policy. The court also recognized that the Superintendent of Police had ample justification for developing a policy that punished officers who drink and drive. However, the court observed that the officer was "a **four year veteran** of the police department with an unblemished record," and may not have been aware of the policy or that it applied to the particular situation. *Id.* at 577 (emphasis added). The Fourth Circuit remanded the matter back to the Commission to determine the appropriate level of discipline short of termination. Ultimately, the parties agreed to a 120-day suspension.

Here, Appellant has a thirty-two-year history as an employee with the DPW. And, during those thirty-two years, Appellant never received so much as a letter of reprimand, and her performance assessments were uniformly positive. Further, the Commission does not believe that Appellant's failure to promptly produce historic citation data is equivalent to an NOPD Officer operating a vehicle while intoxicated. Therefore, a 120-day suspension would be excessive.

In *Bankston*, the New Orleans Fire Department (hereinafter "NOFD") suspended a firefighter for ninety (90) days after failing to report for duty after receiving notice of an emergency activation. *Bankston, supra* at 817. The firefighter acknowledged that he violated NOFD policy by failing to report for duty but cited family-related health issues and an inability to get past a state

police blockade. *Id.* at 818. NOFD found that the firefighter's violation of the emergency activation policy was not premeditated, but the NOFD Superintendent wanted to send a message that it was/is important for firefighters to report to work during an emergency situation. *Id.* at 819.

The Commission sustained the firefighter's ninety-day suspension following an appeal hearing and the firefighter pursued an appeal before the Fourth Circuit. The Fourth Circuit reduced the suspension from ninety (90) days to thirty (30) days finding that NOFD failed to properly take into account the mitigating circumstances presented by the firefighter during the course of the appeal hearing. *Id.* at 822.

The Commission believes that the logic applied by the Fourth Circuit in *Bankston* is relevant to the instant appeal. While Appellant's actions constitute serious misconduct, the Commission must take into account the mitigating factors. In proposing a 166-day suspension and involuntary demotion the DPW continues to ignore the mitigating circumstances regarding Appellant's failure to produce the requested citation data. Had Appellant's misconduct warranted such a severe level of discipline, the Commission would not have overturned termination. From our perspective, misconduct that warrants a 166-day suspension and involuntary demotion would also warrant termination. The degree of severity separating these two levels of discipline is so small as to be insignificant.

Due to the lack of any meaningful input from the Parties, the Hearing Examiner turned to NOPD's penalty matrix for guidance as to the appropriate level of discipline. In doing so, the Hearing Examiner opined that Appellant's misconduct amounted to "neglect of duty" and warranted a one-day suspension. The undersigned Commissioners appreciate the Hearing Examiner's thoroughness and creativity, but disagree that the NOPD's penalty matrix provides for a true equivalent. Ultimately, the duties and responsibilities of a Parking Administrator are too

disparate from a law enforcement officer to establish a fair comparison. Furthermore, Appellant's failure persisted over a substantial period of time and was compounded by her failure to either produce the requested documents or seek assistance.

### III. Conclusion

As a result of the foregoing, the Commission finds that involuntary demotion to a lower classification is commensurate with Appellant's actions. In a lower classification, Appellant will have less responsibilities and be better able to focus on specific tasks. Given Appellant's training, education and experience, the Commission finds that an involuntary demotion to the classification of Assistant Parking Administrator is appropriate. The Appointing Authority shall reinstate Appellant to the position of Assistant Parking Administrator at a step that would result in no greater than a $3,000/yr. reduction in salary. Should Appellant serve the full five-year term in her DROP status, this reduction will amount to approximately $11,000 in lost earnings. This amount is approximately what at 60-day unpaid suspension would have cost Appellant.

This involuntary demotion shall be retroactive to Appellant's date of termination with the exception of the period of time Appellant was reinstated – pending final Commission action – to the position of Parking Administrator. For that period of time Appellant shall retain all compensation and emoluments earned during this interim period. Finally, the Appointing Authority shall remit to Appellant all back pay and emoluments consistent with her reinstatement at a lower classification effective January 11, 2016.

The Commission finds that an involuntary demotion represents a substantial level of discipline and will not impose any additional discipline in the form of an unpaid suspension.

Z. Edmonds
Nos. 8444, 8467, 8485

Judgment rendered this 16th day of November, 2017.

CITY OF NEW ORLEANS CIVIL SERVICE COMMISSION

WRITER

_____        11-14-17
TANIA TETLOW, COMMISSIONER                   DATE

CONCUR

_____        11-14-17
RONALD P. McCLAIN, VICE-CHAIRMAN             DATE


DISSENT

_____        11-13-17
STEPHEN CAPUTO, COMMISSIONER                 DATE

## DISSENT

I believe that the imposition of an involuntary demotion is too severe a penalty and would instead recommend that the Commission impose a sixty-day unpaid suspension. With this recommendation, I recognize that Appellant's failure to promptly and fully respond to the OIG's request for citation data represents serious misconduct. There were, however, numerous mitigating factors that the Commission should take into account. I am particularly struck by the thirty-two years of service Appellant has provided to the City of New Orleans without any prior discipline or disparaging remark in her performance evaluations. Without such mitigating factors, Appellant's actions may have warranted a more severe penalty. However, the totality of circumstances leading to Appellant's failure to provide the OIG with historical parking citation data lead this Commissioner to recommend a lesser, but still serious, level of discipline. I note that Appellant should be aware that any future misconduct, especially any dereliction of duty, would likely provide sufficient cause for the DPW to terminate her employment.