# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF THE STATE OF LOUISIANA

| | | |
|---|---|---|
| **Zepporiah Edmonds** | CIVIL ACTION No. | 16 cv 00298 |
| **VERSUS** | JUDGE: | I. Lemelle |
| **City of New Orleans, Mark D. Jernigan and Linda Copeland** | MAGISTRATE: | D. Knowles |

## AFFIDAVIT OF PLAINTIFF'S WITNESS SHERIDA EMERY

I Sherida Emery, am a long term employee of the City of New Orleans, with 17 years of service to date. More particularly, I am currently employed by the Department of Public Works and the Parking Division as a Parking Section Supervisor. For almost all of my tenure with the Parking Division, until her removal from her position as head of the Parking Division, my immediate or department supervisor was Zepproiah Edmonds, who I worked under at all times as a subordinate and who I often worked with closely in the management of and supervision of the employees of the Parking Division, which includes Parking Enforcement Officers, Tow Truck Operators and all others involved with management of public or street parking spaces, violations, enforcement and parking restrictions in the City of New Orleans.

## COOPERATION WITH INVESTIGATIONS:

In my almost 16 years of working closely with Zepporiah Edmonds with her as my superior in the Parking Division, there have been several instances where myself and others as employees of the Parking Division were called upon to cooperate with City of New Orleans Office of Inspector General ("OIG") in their investigations of Parking Division employee performance or activities. It is with my direct observations, direct experience and direct knowledge having worked with Zepporiah Edmonds during period of time including these OIG investigations that she had and has consistently demanded that all Parking Division employees fully cooperate with, fully inform, and fully disclose truthfully any information to the OIG and it's investigators, and that we at all times fully cooperate with any OIG investigation. It is my understanding that Ms. Edmonds is accused of having not fully cooperated with certain OIG investigations during her tenure as head of the City's Parking Division, and I attest here that from my frequent and direct work with Ms. Edmonds during this period, that such accusations are absolutely untrue.

## ROTATION OF DUTIES AMONGST SUPERVISORS:

During the tenure that I worked in the Parking Division with Zepporiah Edmonds as the head of that division, it was the regular practice of the division to periodically rotate particular duties and responsibilities amongst the higher level supervisors, including myself. It is my understanding that one of the reasons provided by the City of New Orleans for the termination or firing of Zepporiah Edmonds is that the change of duties or responsibilities for Parking Division employee/supervisor Valarie Petty was alleged to be an act of "retaliation" or vindictiveness on the part of Zepporiah Edmonds against Ms. Petty. This is absolutely untrue. The change in responsibilities for Ms. Petty coincided

with the periodic changes in responsibilities for several Parking Division higher level supervisors, including myself – as I was affected by a change in both physical location assignment and job responsibilities by this change, and all of these changes in responsibilities were a part of the regular practice of the Parking Division and did not involve retaliation or vindictiveness from anyone toward anybody.

## ABUSIVE TREATMENT BY LINDA COPELAND AND REPORTS OF SAME TO DPW HEAD JERNIGAN IGNORING SAME

In October, 2014, Linda Copeland appeared at the City Auto Pound on North Claiborne avenue attempting to intimidate Auto Pound employees into illegally releasing an automobile owned by one of her friends or acquaintances. When the Auto Pound employees refused to release the vehicle, she verbally abused and threatened the employees. It is my understanding that this incident is on videotape. She then called me by telephone, and attempted to get me to release the vehicle. When I informed Ms. Copeland that I could not legally release the vehicle, Ms. Copeland blatantly threatened me and Ms. Edmonds, stating that "If that vehicle is not released today, you and Zepp will hear from me in regards to this". I then informed DPW Head Jernigan of this situation via an E-mail chain (attached to this memorandum as Exhibit 22.) To date, I am unaware of any discipline or correcting of Ms. Copeland for her antics of that date, but Mr. Jernigan did reveal "his disappointment" of me because I had revealed my concerns about Ms. Copeland's threats to his superiors and other City Officials. Mr. Jernigan told me that "I had violated his trust" in telling other city officials about Ms. Copeland's antics and threats to me and Ms. Edmonds. . This behavior by Mr. Jernigan disturbed me greatly. Exhibit 23 attached include a set of E-mails

## Tape of Ms. Robins' conversations with me and her claims of Mr. Jernigan's lack of trustworthiness

Again, I am very familiar with the operations of the Parking Division, and until early August, 2017 defendant Mark Jernigan was the head of the Department of Public Works, the department that I am assigned to. During the course and scope of my work I have been and am in frequent contact with Mr. Jernigan, as well as City Attorney Elizabeth Robins, who is frequently assigned to work with our department on Civil Service tenure and disciplinary matters involving our department's employees.

On December 7, 2016, Elizabeth Robins, who serves as counsel for (then) Department of Public Works Mark Jernigan as well as defendant City of New Orleans in this matter, requested via email for me to meet with her privately at the City Attorney's Office to discuss an upcoming Civil Service Appeal for a certain Parking Division employee not part of this litigation. The meeting was held in the City of New Orleans' Law Department located at 1300 Perdido Street, New Orleans, Louisiana on the date of December 8, 2016. Ms. Robins and myself were the only two attendees to this meeting. As a participant in the meeting, I am legally able under Louisiana law to record this meeting and conversation, and was not required to receive Ms. Robin's permission to record that meeting. The total time of the recording is 1:09:32 (One hour, Nine minutes and 32 seconds).

During the course of this meeting, there were two specific timeframes [timed 23:09 - 28:01] and [timed 1:04:20 - 1:06:01] in which the discussion focused on Ms. Robins' concerns regarding the truthfulness and unethical work practices of her client, DPW head Mark Jernigan. Listed below are pertinent excerpts/quotes of Ms. Robins' made by her voluntarily during the December 8, 2016 between myself and Ms. Robins.

4

1. (At 23:09 – 26:51): Ms. Robins at her own initiative changed the meeting/conversation topic to a discussion about a promotion that DPW head Mark Jernigan had wrongfully denied me despite my applying for and having been qualified for the position. After I had stated to Ms. Robins that I did not receive the promotion, Ms. Robins stated, "I'll tell you what and just between you and I...". She went on to discuss in detail a confidential meeting that was held with Mark Jernigan in which he had attempted to falsely accuse me (Ms. Emery) of plagiarism.

2. (At 26:53 – 27:13): Ms. Robins then went on to explain to me (Ms. Emery) about how she tried to caution DPW head Mark Jernigan regarding his questionable tactics as the Appointing Authority. Ms. Robins states, "I even told him, I know that you guys have your own ideas what you want to do that's like you need to be careful with what you're doing here because it certainly looks to us like this person would have a valid claim if you're going to deny it based on that and that's when he came up with the plan..."

3. (At 1:04:20 – 1:04:46): Ms. Emery then asked if DPW head Mark Jernigan would have been able to discipline her (Ms. Emery) for the false accusation of plagiarism, Ms. Robins responded, "We would not have supported that as the Law Department, you know, like plagiarism isn't a rule *(she chuckles)* and it was patently absurd."

4. (At 1:04:50 – 1:05:03): I (Ms. Emery) then asked, "Why did he do that"? Ms. Robins responded, "He was trying to find a reason that he didn't have to give you that position so he wanted to attack anything so he came up with that."

5. (At 1:05:05 – 1:05:17): Ms. Robins goes on to question Mark Jernigan's integrity and credibility. She states, "Like he (Jernigan) was always very tricky that like you know I can rarely get him on the phone, they're certain people that like when we talk to, you got to have a witness cause they 'aint gonna remember."

A full and unedited copy of the recording of the entire December 8, 2016 meeting between Ms. Robins and Ms. Emery is available upon request.

The preceding is true and correct to the best of my recollection and belief.
Sworn and attested to by me, SHERIDA EMERY, this ____4____ day of September, 2017.

Signed _____
SHERIDA EMERY – AFFIANT

Sworn and attested to before me, Dominic N. Varrecchio, Notary Public, Louisiana Bar No. 19456, this ____4____ day of September, 2017 in New Orleans (Orleans), Louisiana.

_____
Dominic N. Varrecchio
Notary Public, La Bar No. (# 19456)

6

Dominic N. Varrecchio
Notary Public, La Bar No. (# 19456)


Respectfully submitted,

*Dominic N. Varrecchio*

Dominic N. Varrecchio (# 19456)
300 Lafayette Street, Suite 103
New Orleans, LA 70130
Telephone: (504) 524-8600
Email: knic55@cox.net
*Attorney for Plaintiff Zepporiah Edmonds*


CERTIFICATE OF SERVICE

I certify that a copy of the above and foregoing has been served upon counsel for all parties by the USDC Court Electronic Filing System, this 4th of September, 2017.

*Dominic N. Varrecchio*

DOMINIC N. VARRECCHIO

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF THE STATE OF LOUISIANA

| | |
|---|---|
| **Zepporiah Edmonds** | **CIVIL ACTION No.**   16 cv 00298 |
| **VERSUS** | **JUDGE:**   I. Lemelle |
| **City of New Orleans,** **Mark D. Jernigan and** **Linda Copeland** | **MAGISTRATE:**   D. Knowles |

## AFFIDAVIT OF PLAINTIFF'S WITNESS JOHN EDMONDS

I, JOHN EDMONDS, am the husband of Petitioner ZEPPORIAL EDMONDS. We have been married since February 25, 1989 through the present.

### PARKING CONFERENCE OF JUNE, 2012

On or about June 10, through 14, 2012, I accompanied my wife, ZEPPORIAH EDMONDS, as I often did, to an out-of-town parking conference, the International Parking Institute Conference & EXPO, which was held in Phoenix, Arizona involving parking management professionals, such as my wife who at the time was the Parking Administrator for the City of New Orleans, and which was attended by vendors from different companies promoting or marketing different products to the different cities and jurisdictions that have parking management.

While at a reception that is a regular part of these conferences, I stood next to my wife and watched with my own eyes as she was approached by a man, a Black male approximately 60-70 years old, who appeared to know my wife, and he extended his greetings to her, and to the best of my hearing and recollection, happily and loudly stated the following as he laughed and seemed to enjoy informing my wife of the following:

> "We're coming to New Orleans. We're going to get the contract. It's a done deal. Now, don't look for me to do a lot of work because I'm a retired grandfather, but I'll be coming and working with them. We've got that contract. It's a done deal."

My wife and the man exchanged a few more seconds of conversation, then the man left us. My wife seemed a bit taken aback and explained to me that the man worked for a contract vendor (applicant) and claimed to have a lock on a contract that had not yet been awarded. My wife also told me, "I am telling Cedric (Grant – the Deputy Mayor) about this as soon as I get back". Later my wife identified the person as a man affiliated with Duncan Solutions, an applicant to the contract that my wife complained about and which eventually led to my wife losing her job with the City of New Orleans.

## MY WIFE'S ILLNESSES AND UNSUCCESSFUL ATTEMPTS TO DELAY HER TERMINATION HEARINGS IN 2015 and 2016

I watched and observed with my own eyes the toll that my wife's illnesses had upon her in mid-2015 through early 2016. I share the same household with her, watched

2

with my own eyes and heard with my own ears her telephone conversations with her doctors, her attorneys and her employers as she desperately attempted to postpone her Termination Hearings because she was too ill to attend the hearings due to her illnesses. I watched her emotional devastation when her employer insisted upon Terminating her and going forward with the hearings despite her doctor's orders not to attend the hearings, and watched her emotional devastation when they first went forward with that final hearing with her absent, and then the added emotional devastation of her being actually Terminated by the City of New Orleans after 31-plus years of service. Her emotional devastation continued as well as her actual illnesses, and her condition worsened for months, and I alone was put into the role of performing all of those duties previously performed by my wife (child care, school transportation, cooking, caring for child's needs and illnesses, etc.), as well as those that I previously had performed myself. It took many, many months for my wife to begin to heal from the emotional devastation caused by her Termination as well as her illnesses.

The preceding is true and correct to the best of my recollection and belief.

Sworn and attested to by me, JOHN EDMONDS, this 2nd day of September, 2017.

Signed _____
JOHN EDMONDS  -  AFFIANT

3

Sworn and attested to before me, Dominic N. Varrecchio, Notary Public, Louisiana Bar No. 19456, this 2nd day of September, 2017, in New Orleans (Orleans), Louisiana.

---

Dominic N. Varrecchio
Notary Public, La Bar No. (# 19456)

Respectfully submitted,

*Dominic N. Varrecchio*

---

Dominic N. Varrecchio (# 19456)
300 Lafayette Street, Suite 103
New Orleans, LA 70130
Telephone: (504) 524-8600
Email: knic55@cox.net
*Attorney for Plaintiff Zepporiah Edmonds*

CERTIFICATE OF SERVICE

I certify that a copy of the above and foregoing has been served upon counsel for all parties by the USDC Court Electronic Filing System, this 4th of September, 2017.

*Dominic N. Varrecchio*

---

DOMINIC N. VARRECCHIO